Orville Leland DAVIS, Petitioner,

v.

ADULT PAROLE AUTHORITY, Respondent.

No. C–1—77–613.

United States District Court, S. D. Ohio, W. D.

Jan. 14, 1981.

Charles S. Kamine, Cincinnati, Ohio, for petitioner.

Richard David Drake, Asst. Atty. Gen., Columbus, Ohio, for respondent.

## MEMORANDUM

HOGAN, Senior District Judge.

Davis filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254, seeking relief from guilty plea to two counts of armed robbery and two counts of malicious entry into a financial institution in Hamilton County, Ohio. Six issues are presented.

I) Is the petition, or any part of it, stale under Habeas Rule 9(a) and therefore subject to dismissal?

II) Was the petitioner twice placed in jeopardy for the commission of a single act? (Ground A in petition.)

III) Did the omission of the word malicious from the indictments charging malicious entry into a financial institution make such indictments invalid? (Ground B.)

IV) Was the guilty plea entered by the petitioner, and the constitutional rights waived thereby, done so voluntarily? (Ground C.)

V) Was petitioner denied his Sixth Amendment right to counsel when pleading guilty? (Ground D.)

VI) Were petitioner's due process rights violated by an unfulfilled plea agreement? (Ground E.)

We answer the first issue in the affirmative as to grounds D and E of the petition, and therefore dismiss those claims. The second issue is answered affirmatively, and relief is granted. We reject the petitioner's claim in issue IV and refuse to reach issues V and VI.[1] The petition is denied in part and granted in part.

The petition for the writ of habeas corpus was filed in this Court on October 20, 1977 (Doc. 1). We ordered the respondent to file a return of writ (Doc. 2). In March, 1978, ground F[2] of the petition was dismissed for failure to exhaust state remedies (Doc. 7). In May, the remainder of the petition was dismissed as stale under Habeas Rule 9(a) (Doc. 11). Petitioner appealed on June 27, 1975 (Doc. 15). The Sixth Circuit Court of Appeals reversed and remanded the case for further proceedings on November 27, 1979. 610 F.2d 410 (6th Cir. 1979). In August, 1980, Charles S. Kamine was appointed counsel for the petitioner for purposes of a hearing before this Court (Doc. 21). Such hearing was held on December 8, 1980 in Cincinnati, Ohio (Doc. 26). Testimony was elicited from the petitioner and Evelyn Doyle, his mother (Id.). The case is now before this Court for disposition.

In reversing our prior decision in this case, the Sixth Circuit disapproved of our interpretation of Rule 9(a). After outlining the proper approach to applying Rule 9(a),[3] the Court of Appeals instructed this Court to hear this case on the merits, unless there was additional evidence of prejudice to the state.[4] This Court conducted an evidentiary hearing on both the possibility of additional prejudice for Rule 9(a) purposes and the merits of the petitioner's claims.

As previously indicated, Davis and his mother, Evelyn Doyle, testified at the hearing. The crux of Davis' testimony involved the chain of events from the time of his transfer to Hamilton County jail until his October 23, 1963 guilty plea. Davis testified that his privately-retained attorney made a deal with the prosecutor.[5] Davis

---

1. While the merits of issues V and VI (grounds D and E) are discussed, we are merely stating how these issues would be decided if we reached them. Our position on the applicability of Habeas Rule 9(a) forecloses any necessity to decide these issues.

2. Ground F involved an equal protection claim based on failure to credit time to petitioner's sentence.

3. This approach will be discussed more completely when dealt with on the merits of the respondent's Rule 9(a) argument.

4. The sole basis for prejudice in our first disposition of the case was the absence of a trial transcript. 610 F.2d 410, 416 (6th Cir. 1979).

5. This alleged deal involved dismissing the armed robbery counts, receiving concurrent sentences to run with the sentence he was serving, and to assure parole eligibility in 1965. This

stated that he was taken before Judge Schneider on October 22, 1963 and pleaded guilty. Judge Schneider imposed sentences of twenty years on malicious entry and ten to twenty-five years on armed robbery, to be served consecutively. Davis was to be sent to the Ohio penitentiary. Davis stated that this violated his plea agreement and that he complained to a jailer. The next day, Davis was taken before Judge Leis, where he withdrew his guilty pleas of the previous day. He pleaded guilty again and received the same sentence, but it was to run concurrently. Davis testified that this breached his plea agreement. He also stated that neither judge informed him of his constitutional rights against self-incrimination, to a jury trial and to confront his accusers. It was Davis' testimony that he was unrepresented at both proceedings.

In his testimony, Davis also explained his tardiness in filing appeals and raising issues. Davis indicated he did not know he could appeal until 1965 or 1966 and that prison policy prevented pursuing appeal until 1969. He explained that some issues were not raised early on because he was not aware of these issues and because his appeals were being prepared by other inmates.

Evelyn Doyle, the petitioner's mother, also testified. Ms. Doyle retained and paid private counsel to defend her son against the indictments in Hamilton County. She went to a courtroom in Hamilton County and saw a proceeding, one she thought was her son's trial. She did not see the retained attorney in the courtroom. After this proceeding, he told her to contact the attorney because the sentence was not right. She contacted the counsel she had retained. It was Ms. Doyle's testimony that she did not see Davis' codefendant at the proceeding. She stated she still contacts the attorney

she retained for her son and is not upset with him.

## FINDINGS OF FACT

1. The petitioner, Orville Leland Davis, was named in two indictments as a defendant in 1962 in Hamilton County, Ohio. Each indictment contained two counts: armed robbery [6] and malicious entry into a financial institution.[7] Davis pleaded guilty on October 23, 1963 and was sentenced to twenty years for malicious entry of financial institution and ten to twenty-five years for armed robbery, by Judge Simon Leis. All sentences were to run concurrently with one another and with a prior sentence.

2. Davis was imprisoned in the Ohio penal system from 1962 until 1972. He was furloughed in September, 1972. Davis was incarcerated in December, 1972 in Columbus, Ohio.[8] He left Ohio in March, 1973, traveling through Michigan to Wisconsin. On March 28, 1973, Davis was arrested in Wisconsin. He remained in custody there until August 4, 1977, at which time he was transferred to the State Prison of Southern Michigan in Jackson, Michigan.[9] He is presently serving a prison term for second-degree murder in this institution.

3. Two attorneys were connected with the defense of Davis against the Hamilton County indictments; one was court-appointed and the other was privately retained. Both were paid. Neither of these attorneys has any recollection of facts significant to the present case. These facts include whether there was a plea agreement in Davis' case; whether Davis was represented by counsel on the date of his guilty plea; if a plea agreement existed, whether it was breached; and whether the court advised Davis of his various constitu-

parole assurance was related to where Davis served his time. By going to a reformatory, an earlier parole date was possible.

**6.** Ohio Rev.Code § 2901.13.

**7.** Ohio Rev.Code § 2907.14.

**8.** Davis was arrested in Columbus on three counts of armed robbery. These charges are outstanding, as is a charge for parole violation.

**9.** Davis pleaded guilty to a murder committed on March 27, 1973 in Michigan.

tional rights prior to accepting his guilty plea.[10]

4. Judge Leis and Judge Schneider [11] are both deceased and therefore unable to testify as to the events during Davis' stay at the Hamilton County jail.

5. Davis' first attempt to seek relief from his October 23, 1963 guilty plea came in the form of a motion to vacate the judgment and sentence. This was filed in August, 1969 and raised only the issue of a defective indictment. After denial of this motion, Davis filed a motion for leave to appeal to the Hamilton County Court of Appeals in April, 1970. The issue of voluntariness of the plea was raised for the first time. This motion was denied. In September, 1976, Davis sought review by the Ohio Supreme Court. Review was denied. A petition for a writ of habeas corpus was filed in this Court in October, 1977, raising the issues now before us. The issues concerning the plea agreement, the voluntariness of the plea, and lack of counsel [12] have never been raised in a trial court in the State of Ohio.

6. Davis' testimony as to the chain of events from the time of his transfer to the Hamilton County jail in June, 1963 up to his guilty plea of October 23, 1963 is not credible. In making this determination, we have considered the petitioner's interest in this case, his manner of testimony, and his record of criminal convictions. The inconsistency of this testimony with the records of the Hamilton County Court of Common Pleas, and the length of time which passed before these issues were raised were also considered in making this finding. Davis' testimony as to lack of counsel is particularly unbelievable. This issue was not raised

until 1976. Davis claims that two lawyers ignored their duties. The record indicates that Davis knew how to complain when his sentence was too harsh, but Davis did not complain that his lawyer was not present. This is untenable. In view of these facts, we reject Davis' testimony as to the scenario of his Hamilton County guilty plea.[13]

## CONCLUSIONS OF LAW

### I.

■ The first issue we must address is the applicability of Habeas Rule 9(a). The rules governing habeas cases under § 2254 were promulgated in 1977. The law concerning these rules is just beginning to evolve. Rule 9(a) is concerned with delayed petitions.

A petition may be dismissed if it appears that the state of which the respondent is an officer has been prejudiced in its ability to respond to the petition by delay in its filing unless the petitioner shows that it is based on grounds of which he could not have had knowledge by the exercise of reasonable diligence before the circumstances prejudicial to the state occurred.

On appeal to the Sixth Circuit, the instant case provides some guidelines as to the application of Rule 9(a). Rather than treat Rule 9(a) as a rigid statute of limitations, Judge Keith, writing for the panel, suggested that Rule 9(a) invokes the equitable doctrine of laches. 610 F.2d at 414. In this context, Rule 9(a) lays down a two-pronged test. Once delay exists, the state must appear to be prejudiced in its ability to respond to the petitioner's claim. In addition, the petitioner must be given the op-

---

**10.** In *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), Justice Douglas outlined certain rights which a criminal defendant must knowingly waive in order to voluntarily enter a guilty plea. These include the privilege against compulsory self-incrimination, the right to a jury trial, and the right to confront one's accusers.

**11.** Davis alleges he was sentenced by Judge Schneider on October 22, 1963, before the sentencing by Judge Leis.

**12.** This issue was initially raised before the Supreme Court of Ohio.

**13.** This finding is essential in determining only the deprivation of counsel argument, even though it would stand as an alternate ground for our rejection of Davis' claim as to the breached plea agreement.

portunity to meet or rebut the apparent prejudice to the state, or to show that resulting prejudice would not have been avoided had the petition been filed earlier. Id.

Since the petition was filed more than five years after Davis' guilty plea, prejudice to the state's ability to respond is presumed. *See Davis v. Adult Parole Authority,* 610 F.2d 410 (6th Cir. 1979) n. 12; Advisory Committee Note, Habeas Rule 9. Even though the record of the hearing presents no clear evidence that an earlier filing would have avoided prejudice to the state, we are compelled to recognize that any prejudice which accrued to the state under grounds A, B and C of the petition would not have been avoided by an earlier filing. The indictments are clear from the record. The issues as to double jeopardy and the sufficiency of the indictment can be decided without looking beyond them. The issue concerning voluntariness is controlled by *Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). *Boykin* involved a silent record. The best the state can present here is a silent record. Therefore, if *Boykin* is retroactive, Davis' plea was involuntary. Therefore, we reject the state's suggestion that grounds A, B and C of the petition be dismissed under Rule 9(a).

We do, however, dismiss grounds D and E under Rule 9(a). As indicated previously, the state is presumptively prejudiced in this case. In addition to this presumption, the hearing revealed that both judges allegedly involved with Davis' guilty plea were deceased and that both attorneys involved had no recollection of the facts in issue. (See Finding of Fact # 3.) Davis was given the opportunity to rebut this prejudice or to show that an earlier filing would have avoided the prejudice. In an effort to rebut the prejudice of Judge Leis' death, the petitioner noted that it occurred after the Sixth Circuit decision, but prior to the hearing. We find this fact to be irrelevant to our determination. When Judge Leis died is not important. What is important is that the state has been prejudiced in its effort to rebut Davis' petition. Delay plus prejudice equals dismissal, absent evidence rebutting the prejudice or showing that the delay did not relate to the prejudice. There is no evidence that an earlier filing by Davis would not have avoided the prejudice. In fact, common sense dictates the opposite conclusion. An earlier petition would have found living witnesses with, at least possibly, better recollection. Davis has not met his burden with reference to grounds D and E. Therefore, they are dismissed under Rule 9(a).

## II.

The next issue before the Court is whether Davis' guilty plea to an indictment which charged him with malicious entry of a financial institution and armed robbery for a single act violated the double jeopardy clause of the Fifth Amendment as applied to the states through the Fourteenth Amendment. *See Benton v. Maryland,* 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969).[14] We find that the principles of double jeopardy are offended by both indictments, and therefore vacate the conviction and sentences for the lesser included offense of malicious entry.

Double jeopardy is violated by multiple punishment for a single offense, as well as multiple trials. *See North Carolina v. Pearce,* 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969); *Ex parte Lange,* 85 U.S. (18 Wall) 163, 21 L.Ed. 872 (1874). While concurrent sentences were granted here, the stigma associated with a criminal conviction is equivalent to punishment, *cf. Benton v. Maryland,* 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969), and therefore if we find that the two crimes merged, Davis' convictions are inconsistent with double jeopardy principles.

Davis was named in two separate two-count indictments. Each indictment included the offense of malicious entry of a financial institution and armed robbery. The

---

14. The incorporation of the double jeopardy clause to the states is to be applied retroactive-

ly. *See Waller v. Florida,* 397 U.S. 387, 90 S.Ct. 1184, 25 L.Ed.2d 435 (1970).

crucial issue is whether Davis committed a single offense in each case, or two separate offenses. If only a single offense was committed, a double jeopardy problem arises. We find such a problem.

The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other did not. *Brown v. Ohio*, 432 U.S. 161, 166, 97 S.Ct. 2221, 2225, 53 L.Ed.2d 187 (1977), quoting *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). While armed robbery requires proof of facts which are not involved in the malicious entry offense, it would be totally without reason to contend that Davis could have committed the armed robbery of two finance companies without violating the statute prohibiting malicious entry.

■ The gravamen of the entry statute is the malicious intent. This mental element merges into the crime of armed robbery when it is consummated. *Cf. Prince v. United States*, 352 U.S. 322, 77 S.Ct. 403, 1 L.Ed.2d 370 (1957). The *Prince* decision, while based on federal statutes, is quite analagous. In that case, the defendant was sentenced to consecutive terms for robbery and entry with the intent to rob. Chief Justice Warren, writing for the majority, noted that the mental element of the entry statute was the heart of the crime. Once the crime of robbery was consummated, this mental element merged into the completed crime. *Id.* at 328, 77 S.Ct. at 406. In the instant case, the same analysis is appropriate. The malicious entry charge merges into the armed robbery creating only one offense. Since multiple punishment for a single offense is prohibited by the double jeopardy clause, Davis' conviction and sentence for malicious entry are vacated.[15]

### III.

■ The next issue before this Court is whether the 1962 indictments were insufficient. This issue can be dismissed without discussion on the merits for two reasons. One, this Court has already vacated the conviction and sentence imposed by the allegedly faulty indictment, thereby mooting this issue. Two, the issue does not rise to a violation of the United States Constitution or laws or treaties of the United States as required by 28 U.S.C. § 2254(a). Davis' argument is based solely on state grounds.[16] As such, it is not a basis for relief under § 2254. For these reasons, we reject ground B of the petition.

### IV.

■ The voluntariness of Davis' plea before Judge Leis is the next question facing this Court.[17] Davis argues that Judge Leis failed to inform him of certain constitutional rights prior to his plea, thereby making his waiver of those rights unintelligent and involuntary. *See Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969). The record here is silent, as it was in *Boykin*. However, the United States Supreme Court has not ruled on the retroactivity of *Boykin*, nor has the Sixth Circuit. *See Cochran v. Norvell*, 446 F.2d 61 (6th Cir. 1971). Several circuit courts have rejected arguments that *Boykin* is retroactive and have refused to apply as such. *See, Reeves v. Mabry*, 615 F.2d 489 (8th Cir. 1980) *citing Crowe v. South Dakota*, 484 F.2d 1359 (8th Cir. 1973) *cert. den.* 415 U.S. 927, 94 S.Ct. 1435, 39 L.Ed.2d 485 (1974); *also Dominguez v. Henderson*, 447 F.2d 207 (5th Cir. 1971); *Spencer v. Eyman*, 439 F.2d 1136 (9th Cir.) *cert. den.* 404 U.S. 838, 92 S.Ct. 129, 30 L.Ed.2d 71 (1971); *Smith v. Cox*, 435 F.2d 453 (4th Cir. 1970) *vac. and rem. on other grounds, sub nom Slayton v. Smith*, 404 U.S. 53, 92 S.Ct. 174, 30 L.Ed.2d 209 (1971); *United States ex rel. Hughes v.*

---

**15.** This act by the Court would result in the fulfillment of Davis' alleged plea agreement.

**16.** Davis' counsel admitted that this ground was an issue of state law.

**17.** As stated previously, we are not deciding grounds D and E of Davis' petition, but merely explaining how we would decide these issues if Rule 9(a) were not applicable.

*Rundle,* 419 F.2d 116 (3d Cir. 1969). The reasoning behind these decisions is that the decision in *Halliday v. United States,* 394 U.S. 831, 89 S.Ct. 1498, 23 L.Ed.2d 16 (1969), announcing that the decision in *McCarthy v. United States,* 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969) should not be retroactively applied, made it clear that *Boykin* would not have retroactive effect. *McCarthy* involved Fed.R.Crim.P. 11, which requires federal courts to advise defendants of their rights much in the manner of *Boykin.* The Court's reasoning in *Halliday* is found to be analogous to the retroactivity of *Boykin.* We agree with these circuits, and find that the *Boykin* decision is not to be applied retroactively. Since Davis' plea was pre-*Boykin,* the silent record and any failure to advise Davis of his right are inconsequential. *See Keplinger v. Superintendent, Maryland Correctional Institute,* slip op. No. 75–2253 (4th Cir. 6/7/76).

### V.

 Davis has argued that he was deprived of his Sixth Amendment right to counsel. This argument is based on his testimony that counsel was not present at his guilty plea. There is a presumption that state courts will observe the constitutional limitations expressed by the Supreme Court and protect the rights of those accused of crimes. *See Creighton v. North Carolina,* 257 F.Supp. 806 (E.D.N.C.1966); *Hampton v. Allgood,* 254 F.Supp. 884 (E.D. La.1966); *cf. Dombrowski v. Pfister,* 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965); *Application of Martuzas,* 400 F.Supp. 1305 (W.D.N.Y.1975). The passage of time strengthens this presumption and increases the burden of one seeking to overcome this presumption. *Davis v. Adult Parole Authority,* 610 F.2d 410, 415 (6th Cir. 1979). In the present case, Davis fails to meet his burden. This Court has specifically rejected his testimony on this point (Finding of Fact # 6) and Ms. Doyle's testimony is not sufficient alone to overcome the presumption. Ms. Doyle admitted she was not sure what type of proceeding she saw. For these reasons, ground D of the petition would be rejected.

### VI.

The final issue concerns the breach of the alleged plea agreement. We would reject the petition on this ground for the same reasons as stated in reference to ground D. The only evidence of an agreement and the substance of such agreement is Davis' testimony, which this Court has determined is not credible. Beyond that, the relief granted by this Court in this decision would, for practical purposes, fulfill the alleged agreement.

For the reasons stated hereinbefore, the petition is granted in part and denied in part.