UNITED STATES of America,
Appellee,

v.

Jack COHEN, Appellant.

No. 90, Docket 31458.

United States Court of Appeals
Second Circuit.

Argued Oct. 4, 1967.

Decided Oct. 23, 1967.

Joseph E. Brill, New York City, for appellant.

Andrew M. Lawler, Jr., Asst. U. S. Atty. (Robert M. Morgenthau, U. S. Atty. for Southern Dist. of New York, John A. Stichter and Pierre N. Leval, Asst. U. S. Attys., of counsel), for appellee.

Before FRIENDLY, HAYS and ANDERSON, Circuit Judges.

PER CURIAM:

Appellant Jack Cohen and James Donahue, Sr., who died before trial, representatives of Local No. 2 of the United Association of Journeymen and Apprentices of the Plumbing and Pipe Fitting Industry, were charged in a seven count indictment, filed in 1963 in the District Court for the Southern District of New York, with having accepted payments aggregating $3400 from employers, Leon Novak and Leon Novak Co., Inc., in 1958 and 1959, in violation of 29 U.S.C. § 186 (b) and (d). The trial, before Judge Mansfield and a jury, did not begin until February 1967, but no complaint is made on that score. The jury found Cohen guilty on the first three counts but was unable to agree on the other four which related to occasions when, on Novak's testimony, Cohen was not present at the passing of the money although some was destined for him. The judge imposed a concurrent six months' sentence on the three counts and a $5000 fine on one of them.

Novak testified that he first made payments to Cohen and Donahue in 1955 when, his company having received a contract for a location within Local 2's jurisdiction, he wished to cut some of the pipe at his union shop in Brooklyn rather than on the job and not to experience any "delays" on that account. In 1957, having been awarded another contract within Local 2's territory, he sought the two men out to make a similar arrangement; after some negotiation as to terms, agreement was reached on a figure of 2% of the contract price as against 1½% on the earlier occasion. Novak recounted that his procedure was to instruct his bookkeeper, Miss Farb, to place a certain amount of money in envelopes, marked JC and JD, which he would then give to one or the other or both. She testified she would add an appropriate amount to checks drawn for payroll and expenses, put the excess cash in the safe, and then place it in the envelopes. She kept records showing the dates on which the envelopes were prepared, the addressees, the amounts of the payments and the identity of the construction jobs to which they related. Compare United States v. Schabert, 362 F.2d 369 (2 Cir.), cert. denied, 385 U.S. 919, 87 S.Ct. 230, 17 L.Ed.2d 143 (1966).

■ There is no merit to Cohen's claim that since all payments were made pursuant to a single agreement the Government should have been limited to one count. While the statute condemns the agreement, it likewise makes each receipt or acceptance a separate crime. Such is the teaching of the case law, United States v. Alaimo, 297 F.2d 604 (3 Cir. 1961) (Goodrich, J.), cert. denied, 369 U.S. 817, 82 S.Ct. 829, 7 L.Ed.2d 784 (1962); United States v. Keegan, 331 F.2d 257 (7 Cir.), cert. denied, 379 U.S. 828, 85 S.Ct. 57, 13 L.Ed.2d 37 (1964), and we agree with it. United States v. Universal CIT Credit Corp., 344 U.S. 218, 73 S.Ct. 227, 97 L.Ed. 260 (1944), on which appellant relies, has received rather limited application beyond the specific situation there presented. See United States v. Guterma, 281 F.2d 742, 752–753 (2 Cir.), cert. denied, 364 U.S. 871, 81 S.Ct. 114, 5 L.Ed.2d 93 (1960).

■ Cohen's evidentiary objections are equally unsubstantial. The 1955 agreement was admissible as the inception of the very course of dealing pursued in the crime charged. If the Government had been forced to start with the 1957 conversation, the jury would have obtained "only a truncated version of what was claimed to have occurred," United States v. Bozza, 365 F.2d 206, 213–214 (2 Cir. 1966). See also United States v. Deaton, 381 F.2d 114 (2 Cir. 1967); United States v. Johnson, 382 F.2d 280 (2 Cir. 1967). The claim that Novak's testimony as to his instructions to Miss Farb was inadmissible rests upon the strange "notion that evidentiary use of anything emerging from the mouth is banned unless it comes within an exception to the hearsay rule," United States v. Nuccio, 373 F.2d 168, 174 (2 Cir.), cert. denied, 387 U.S. 906, 87 S.Ct. 1688, 18 L.Ed.2d 623 (1967). The notion, as we there said, "is as fallacious as it is

durable"; Novak's statement that he instructed his bookkeeper to get and give him the money is no more hearsay than testimony that he had obtained the cash without an intermediary would have been. Miss Farb's lists of payments were admissible under the Business Records Act, 28 U.S.C. § 1732, see United States v. Re, 336 F.2d 306, 311–314 (2 Cir.), cert. denied, 379 U.S. 904, 85 S.Ct. 188, 13 L.Ed.2d 177 (1964); the evidence in this case as to the manner in which the lists were compiled overcomes whatever doubts were intimated about admissibility of these records in United States v. Schabert, supra, 362 F.2d at 371–372. Moreover the lists were also receivable as past recollection recorded. 3 Wigmore, Evidence §§ 734–755 (3 ed. 1940).

Appellant's criticisms of the trial judge are so unfounded that detailed comment would be misplaced.

Judgment affirmed.